**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank Arthur TONEY and Ronnie Allen
Smitherman, Defendants-Appellants.**

**Nos. 20509, 20510.**

United States Court of Appeals,
Sixth Circuit.

April 14, 1971.

McCree, Circuit Judge, concurred in
the result and filed opinion.

William F. Bavinger, III, Detroit,
Mich. (Court appointed), for Frank Arthur Toney.

Robert A. Canner, Detroit, Mich.
(Court appointed), for Ronnie Allen
Smitherman.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before McCREE and MILLER, Circuit Judges, and McALLISTER, Senior
Circuit Judge.

McALLISTER, Senior Circuit Judge.

On March 6, 1969, at approximately
1:30 P. M., a branch bank of the Bank
of the Commonwealth, located at Grand
River and Virginia Park in the City of
Detroit, was robbed by three Negro
males. None of the robbers had their
faces covered; they were dressed in
street clothes; and they made no effort
to disguise their identity. They had
been in the bank for a period of three to
five minutes before the robbery. The
bank was equipped with surveillance
cameras which took moving pictures of
the robbery in progress. The two defendants were identified by Frankie
Gerard, a teller in the bank at the time
of the robbery. She was three to four
feet away from one of the robbers, and
fifteen to twenty-five feet away from
another. She said one had a gun and
said: "This is a hold-up." The other
was passing out paper bags, ordering
each teller to fill them. Cecilia Perrin,
another teller in the bank, made an in-court identification of Smitherman. A
customer of the bank, who was there at
the time of the robbery, made an in-court identification of both Toney and
Smitherman. Rowena Lewis, a teller,
testified that she remembered the man
who came to her window on the day of
the hold-up, and described him as having
worn a gray felt dress hat, gym shoes, a
jacket, and khakis; that she would recognize him if she saw him again; that
she saw him, during the trial, in the
courtroom, wearing a blue sports jacket,
that he was sitting behind Mr. Canner,

and that the man she saw in court was appellant Smitherman.

As to appellant Toney, the witness stated that, in the showup, she wasn't positive that the man she saw at the manager's desk was Toney; but she recognized him in the courtroom as the man wearing a green sweater. However, she was not positive that a photograph of Toney, which she was shown in court, was really a photograph of Toney. When the pictures of the surveillance camera were shown in court, the witness testified that she recognized appellant Smitherman "in the jacket with the gray felt hat on," and that "He was passing out paper bags and collecting the money." At the conclusion of the Government's proofs, the defense made a motion for a directed verdict of acquittal, which was denied.

The proofs of the defense consisted largely of an alibi, the witnesses for Toney being himself, and his mother. The witnesses of an alibi for Smitherman consisted of his mother, his grandmother, his girl-friend, an elderly gentleman who lived with the grandmother, and a next-door neighbor.

There was Government rebuttal going to evidence of certain claimed inconsistencies of the testimony of the alibi witnesses.

At the conclusion of their proofs, the appellants not having moved for a directed verdict, the case was submitted to the jury after agreed-upon instructions, and the jury returned a verdict of guilty against both appellants. After the verdict, appellants moved for a new trial and the court took testimony from two witnesses relating to new evidence proffered; but the motion was denied and the defendants were sentenced.

■ The evidence of the Government relating to the identification of the two appellants as robbers of the bank is attacked by appellants who claim that, while the Government witnesses made "in-court identification" of appellants, certain of these witnesses could not identify appellants in a line-up, or others could not identify them from photographs. The fact that a witness cannot identify an accused from a photograph is no reason for excluding his testimony identifying the accused in court. When a man is actually seen in court, his expression, the glance from his eyes, the movement of his facial features may be, to a witness, much more convincing that he has seen that man before than observations of a photograph taken of the accused, or views of him at a "line-up" or police "show-up." United States v. Black, 412 F.2d 687 (C.A. 6).

The fact that some witnesses could not identify one or the other of appellants from photographs, or at "line-ups" but did positively identify them in court during the trial, goes only to the weight to be accorded to their testimony and not to its admissibility, even though appellants were racially distinguishable from their attorneys, with whom they were sitting when they were so identified by such witnesses. Miss Lewis, who stated she "wasn't positive" of the identity of Toney at the "line-up," recognized him in court. Two other witnesses were positive in their identification of Toney as one of the hold-up men, and no question was raised as to any failure on their part to identify him at the police "line-up," or of Miss Lewis' identification of appellant Smitherman.

■ On an examination of the record, we find no error in the admission of the identification of appellants by the witnesses. Further, we find no error in the court's refusal to grant a new trial on the ground of newly-discovered evidence, or of any abuse of discretion amounting to plain error in denying the jury request during its deliberation for a "transcript of Ronnie Smitherman," an appellant who did not testify during the trial. As counsel for the Government pointed out, in answer to the argument of appellant on this question, it may have been the jury's intention to secure a transcript of the testimony of Ronnie Smitherman's witnesses, who testified to support the defense claim of an alibi. The trial judge, in

the presence of the jury, stated that two members of the jury had asked for such transcript, but that they had heard the testimony for three days, and they were the sole judges of the facts; and he denied their request. When a jury submits questions during its deliberations, it is within the discretion of the trial judge to deny or permit the request. Salzman v. United States, 131 U.S.App. D.C. 393, 405 F.2d 358. We find no prejudicial reversible error in any remarks made by Government counsel. Although they were improper, the court immediately stated they were, and that ended the episode. The remarks could not, in their content and in the light of the court's immediate ruling, be considered reversible error.

In accordance with the foregoing, the judgment of the District Court is affirmed.

McCREE, Circuit Judge (concurring).

I concur in the result, but I wish to state my misgivings about the in-court identification of appellant Toney by one of the witnesses.

Since appellants were the only persons seated at the defense counsel table except their attorneys who were racially distinguishable from them, the courtroom identifications were made under highly suggestive circumstances. Rowena Lewis, a witness who positively identified Toney at trial, had been unable to give police a description of the man she later identified as Toney and was unable, three days after the robbery, to positively identify Toney at a police lineup conducted in accordance with the requirements of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). In *Wade, supra,* at 228–229, 87 S.Ct. 1926, the Supreme Court was concerned with the untrustworthiness of eyewitness identification and with the suggestiveness which is often permitted, even inadvertently, to influence identifying witnesses. The Court decided to require the presence of a lawyer at a lineup to insure the essential fairness of identification procedures. The Court laid down no guidelines for in-court identification perhaps because, under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), defense counsel is present in the courtroom (unless waived) and the trial judge who superintends the proceedings can be expected to prevent undue suggestiveness. Nevertheless, essential fairness should require exclusion of Rowena Lewis' identification of Toney under these highly suggestive circumstances because she was unable to make an identification under the laboratory conditions of a lineup held in accordance with the *Wade* standards. *See* Stovall v. Denno, 388 U.S. 293, 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

However, because of the highly convincing quality of the testimony by other witnesses whose identifications of Toney were not so tainted, I regard the error as harmless.