836 F.2d 551
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jimmie E. DUMAS, Defendant-Appellant.
 No. 87-1337.
 United States Court of Appeals, Sixth Circuit.
 Dec. 30, 1987.
 
 Before KEITH, MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant appeals his conviction and sentence for income tax evasion. For the reasons set forth below, we AFFIRM his conviction.
 
 I.
 FACTS
 
 2
 In July of 1986, Defendant Jimmie E. Dumas was indicted of the following crimes: counts one and two of the indictment charges defendant with income tax evasion in violation of 26 U.S.C. Sec. 7201; count three charged that the defendant made false statements to the Internal Revenue Service in violation of 18 U.S.C. Sec. 1001; and counts four and five charged that he aided and abetted the commission of mail fraud in violation of 18 U.S.C. Secs. 1341-42. On December 19, 1986, a jury found defendant guilty on all five counts of the indictment. He was sentenced to two years imprisonment, all but the first six months of which were suspended. Defendant was also ordered to pay all back taxes.
 
 
 3
 Defendant was a Highland Park police officer. Evidence at trial showed that he failed to report several kinds of income on his taxes--income from the salvage inspection fees that he failed to turn over to the Highland Park Police Department; income from moonlighting as a disc jockey; and income from providing prisoner meals out of his Hi-Lighter Restaurant. Evidence showed that defendant still owed the Internal Revenue Service $701.00 in taxes for 1982 and $10,101.00 for 1983.
 
 II.
 DISCUSSION
 
 4
 On appeal, defendant asserts several errors. First, he claims that the trial court abused its discretion in allowing into evidence a financial statement and offer to purchase a house made in 1986. Second, he asserts that the trial judge committed plain error when the judge failed to read back certain testimony to the jury. Finally, defendant urges that the court incorrectly instructed the jury that under 18 U.S.C. Sec. 1001, the issue of "materiality" is a question of law for the court. We find no merit in defendant's claims of error.
 
 
 5
 A. The Admission of the Financial Statement and Offer to Purchase
 
 
 6
 During the trial, on direct examination by defense counsel, defendant was asked about the contents of a financial statement and offer-to-purchase real estate which he executed in 1986. The financial statement contained evidence of defendant's income for 1982 and 1983, the years at issue. In the financial statement defendant reported his income in 1982 and 1983 as approximately $130,000 per year. The offer-to-purchase was a $245,000 Birmingham, Michigan home, using $100,000 as a down payment. Defendant explained at trial that he did not actually purchase the house.
 
 
 7
 On cross-examination, the government asked defendant about the financial statement as it related to his 1982-83 income. The defendant replied that at the time, he did not understand what information the financial statement was soliciting and that he did not have the amount of income reported there. As proof that defendant had substantial income in 1982 and 1983, the government then introduced the offer-to-purchase to contradict defendant's testimony and to corroborate the information contained in the financial statement.
 
 
 8
 Defendant argues that the evidence was either not relevant under Fed.R.Evid. 401 and 402, or if it was relevant, that its probative value was substantially outweighed by the danger of unfair prejudice, pursuant to Fed.R.Evid. 403. We disagree.
 
 
 9
 First, evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The evidence contained in the financial statement was directly relevant to the amount of defendant's income during 1982 and 1983, and therefore was logical proof of the defendant's willful intent to evade income tax. Moreover, when defendant denied his income amounts as set forth in the financial statement, the introduction of the real estate offer was relevant proof contradicting defendant's disclaimer, and it corroborated the truth of the income reported in the financial statement. That defendant did not actually purchase the home goes to the weight of the evidence, and not to its relevancy.
 
 
 10
 Second, as to whether the evidence was unfairly prejudicial under Fed.R.Evid. 403, we are required to "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." United States v. Zipkin, 729 F.2d 384, 389 (6th Cir.1984). The trial judge is to be given substantial discretion in balancing probative value and unfair prejudice. Id. Indeed, "if judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." Id. at 390 (quoting United States v. Long, 574 F.2d 761, 767 (3d Cir.), cert. denied, 439 U.S. 985 (1978)).
 
 
 11
 Defendant urges that the financial statement painted a picture of defendant as a "high-roller" or, when presented in connection with evidence linking defendant to the Drug Enforcement Agency, as a drug dealer, thereby causing prejudice and a potential for jury confusion. The government in its brief concedes that the evidence in the financial statement is indeed prejudicial. But "unfairly" prejudicial "does not mean the damage to the opponent's case that results that the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." 22 C. Wright & K. Graham, Federal Practice and Procedure Sec. 5215 (1978). The object of the rule is to eliminate "illegitimate emotional appeal." Id. We do not believe that the evidence contained in the financial statement reaches this high level of emotion or illogic. As the government indicates in its brief, all relevant evidence is prejudicial to some degree. The financial statement and offer-to-purchase at issue here are relevant, and simply do not rise to the level of prejudice proscribed by Fed.R.Evid. 403.
 
 
 12
 B. Whether the Trial Court Should Have Re-read Testimony to the Jurors.
 
 
 13
 On the morning after the trial was over but before deliberations were completed, the jury sent the following note to the court: "Can we get a copy of all or part of any part of the witness' testimony. One, all of the testimony or number 2, at least Mr. Dumas' and Mr. Dowling's." The court read the note to counsel, and checked with his court reporter. He stated that "according to my reporter," the reading of the testimony of Dumas and Dowling "will take a very minimum of four hours." Judge DeMascio stated that he was "inclined to advise [the jury] that they should rely on their collective memories and then in about twenty minutes to a half-hour inquire whether they thing they're going to arrive at a verdict." Both counsel verbally agreed to the court's suggestion. Judge DeMascio then told the jury to try again, and to ask the court for a reading of the transcript later, if they continued to find deliberations difficult. We quote the instruction to the jury in full:
 
 
 14
 Well, I should say to you now what I probably should have said in the beginning, because you may have a little confusion about that. We do not have a transcript of that testimony.
 
 
 15
 In other words, simply because the court reporter takes it down, all--everything that's said in the courtroom, doesn't mean that we are so sophisticated technologically that we can go right from that to a transcript that is something you can read. It would take some time to type up a transcript, very minimum, probably take a week to 10 days. But that is the reason there are twelve jurors and the only reason there are twelve jurors, namely to rely on collective memories of twelve people.
 
 
 16
 Now, this has been a very short trial and there should be no reason whatsoever that twelve of you can't recall every detail of the testimony. So, I can't give you a transcript. So I am going to ask you to continue your deliberations and if you still feel you need to hear that testimony, I will reconsider. But it would take four hours of your sitting there and Ms. Chatman trying to read it. Take every bit of four hours. I am not sure right now whether that is even necessary or should be necessary. If this was a case of an extended period of time of three, four, five weeks, I might understand it, but not a case that lasted a couple of days. So you go ahead and continue deliberating. If you think that's the only hope of you arriving at a verdict, you can let the Court know.
 
 
 17
 Defendant argues that since the jury was having difficulty reaching a verdict, the court abused its discretion by failing to comply with the jurors' request to re-read the testimony. As defense counsel failed to make a spontaneous objection to the court's procedure, however, we may only review the asserted error under a "plain error" standard. The Supreme Court has held that the plain error standard requires proof that the trial was "infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it...." United States v. Frady, 456 U.S. 152, 163, reh'g denied, 456 U.S. 1001 (1982). We do not find that the trial court committed plain error in this case.
 
 
 18
 As both counsel indicate, this court has long held that any re-reading of testimony is within the trial court's sound discretion, and is reviewable only upon an abuse of that discretion. United States v. Padin, 787 F.2d 1071, 1076 (6th Cir.1986), cert. denied, 107 S.Ct. 93 (1987); United States v. Licavoli, 725 F.2d 1040, 1049 (6th Cir.), cert. denied, 467 U.S. 1252 (1984); United States v. Dennis, 701 F.2d 595, 599 (6th Cir.1983); Moran v. Johns-Manville Sales Corp., 691 F.2d 811, 817 (6th Cir.1982); United States v. Toney, 440 F.2d 590, 591 (6th Cir.1971). A trial court is permitted to weigh the " 'reasonableness of the jury's request and the difficulty of complying therewith.' " Padin, 787 F.2d at 1076 (quoting United States v. Almonte, 594 F.2d 261, 265 (1st Cir.1979)). The facts surrounding these deliberations demonstrate that the trial court was wholly justified in asking the jurors to try again before resorting to re-airing the testimony. Judge DeMascio in this case considered the abbreviated length of the trial, the likelihood that the jurors could successfully rely on their collective memory, and the difficulty of obtaining a transcript. Moreover, he did not expressly prohibit the reading of the testimony; he merely asked them to go back and try deliberating again before he resorted to that time-consuming solution. Finally, as the government indicated in its brief, a trial court should be on guard against re-reading testimony which might serve to highlight or over-emphasize the importance of that testimony when it is taken out of context. See Padin, 787 F.2d at 1076. Thus, under the circumstances of this case, the trial court did not commit plain error, but carefully exercised his discretion in declining to re-read the testimony.
 
 
 19
 C. Whether the Court Incorrectly Instructed the Jury of the Issue of Materiality
 
 
 20
 The trial court instructed the jury on materiality as follows:
 
 
 21
 The issue of materiality, however, members, of the jury, is not submitted to you for your decision, but rather a matter for the decision of the Court. Now, therefore, I instruct you that the statements charged as being false in the particulars that I have them to you are in fact as a matter of law material.
 
 
 22
 Defendant argues that, in light of In re Winship, 397 U.S. 358 (1970), this court should overrule our prior decisions which hold that materiality is a question of law for the court to decide. See United States v. Keefer, 799 F.2d 1115, 1126 (6th Cir.1986); United States v. Chandler, 752 F.2d 1148, 1150-51 (6th Cir.1985); United States v. Abadi, 706 F.2d 178, 180 (6th Cir.), cert. denied, 464 U.S. 821 (1983). In Abadi, however, this court considered and rejected the argument that materiality is an element that must be proved to the jury beyond a reasonable doubt, holding instead that the issue of materiality "turns upon an interpretation of substantive law" which must be determined by the judge. Abadi, 706 F.2d at 180. Thus, we are bound by our own precedent to reject defendant's argument, and we see no reason to reconsider the Abadi decision.
 
 III.
 
 23
 For the foregoing reasons, we AFFIRM defendant's conviction.