673 So.2d 565 (1996)
MEDICAL DEVELOPMENT NETWORK, INC., Appellant,
v.
PROFESSIONAL RESPIRATORY CARE/ HOME MEDICAL EQUIPMENT SERVICES, INC., Appellee.
No. 94-2608.
District Court of Appeal of Florida, Fourth District.
May 22, 1996.
*566 Jeffrey Tew of Jeffrey Tew, P.A., Miami, for appellant.
Barbara Carey del Castillo of Broad and Cassel, Fort Lauderdale, for appellee.
WARNER, Judge.
The issue in this appeal from a summary final judgment is whether the "Public Relations Agreement" between appellant, Medical Development Network, Inc. (MDN), and appellee, Professional Respiratory Care/Home Medical Equipment Services, Inc. (PRC), violates 42 U.S.C.A. § 1320a-7b(b) (West 1991 & Supp.1996), the Medicare/Medicaid Anti-Kickback Statute, thereby rendering the agreement void and unenforceable as a matter of law. We hold that the agreement is void and unenforceable as a matter of law, and affirm the summary final judgment.
MDN and PRC entered into a consulting agreement wherein PRC agreed to pay MDN a percentage of all business developed by MDN's marketing of PRC's durable medical supplies to clients, which included physicians, nursing homes, retirement homes, and individual patients. MDN would contact various users of medical equipment, such as nursing homes and physicians, and promote the use of PRC's equipment. Nursing homes would order supplies directly from PRC. Physicians would refer their patients to PRC for lease or sale of needed medical equipment, such as wheelchairs. As many of the patients served were covered by Medicare or Medicaid, PRC's supplies were paid for by these federal funds in large part. PRC would pay MDN a percentage of its sales generated from clients contacted and serviced by MDN.
When PRC breached the agreement, MDN filed suit, and PRC defended on the ground that the agreement was illegal under the Anti-Kickback Statute. The trial court agreed and entered summary judgment in favor of PRC.
To correct the problem of fraud and abuse in the Medicare system, the Medicare fraud statute was amended by Pub.L. No. 95-142, 91 Stat. 1183 (1977), to strengthen penalties and to enhance the deterrent effect of the statute. United States v. Greber, 760 F.2d 68, 71-72 (3d Cir.), cert. denied, 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 348 (1985). A specific concern was the practice of giving "kickbacks" to encourage the referral of work. Such practices not only deterred price competition but also tended to encourage overutilization of goods and services within the system. See United States v. Ruttenberg, 625 F.2d 173, 177 n. 9 (7th Cir.1980). In 1977, Congress amended the act adding the language prohibiting "any remuneration," including kickbacks. Polk County, Tex. v. Peters, 800 F.Supp. 1451, 1453 (E.D.Tex. 1992).
The United States Code, 42 U.S.C.A. § 1320a-7b(b) (West 1991 & Supp.1996), "Criminal penalties for acts involving Medicare or State health care programs," provides:
(b) Illegal remunerations
(1) whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind
(A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program, or
(B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program,
shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person

*567 (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program, or
(B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under subchapter XVIII of this chapter or a State health care program,
shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.
Id.
MDN contends that the act does not apply to the arrangement it had with PRC, because the act applies only to health care providers. However, none of the cases cited by MDN support its contention that only health care providers may violate the act. Moreover, the federal regulations show that an arrangement such as the one between MDN and PRC is within the contemplation of the statute. The Department of Health and Human Services was charged with designing regulations to specify various payment practices which would not be considered kickbacks for purposes of the act. One statutory exemption provides that payments by an employer to an employee would not be violative of the act. See 42 U.S.C.A. § 1320a-7b(b)(3)(B). The commentary of the Department noted:
In response to the October 21, 1987, request for comments, many commentators suggested that we broaden the exemption to apply to independent contractors paid on a commission basis. We have declined to adopt this approach because we are aware of many examples of abusive practices by sales personnel who are paid as independent contractors and who are not under appropriate supervision. We believe that if individuals and entities desire to pay a salesperson on the basis of the amount of business they generate, then to be exempt from civil or criminal prosecution, they should make these salespersons employees where they can and should exert appropriate supervision for the individual's acts.
54 Fed.Reg. 3088, 3093 (1989) (emphasis supplied). This commentary clearly contemplates that an arrangement whereby MDN is paid a percentage of the sales it generates for PRC is violative of the act.
Although not raised as an issue by the appellant in its brief, the appellee has called our attention to Hanlester Network v. Shalala, 51 F.3d 1390 (9th Cir.1995), which created a two-prong test for the interpretation of the words "knowingly and willfully" in the Anti-Kickback Statute. First, the individual must know that the statute prohibits offering or paying remuneration to induce referrals and, second, the individual must engage in conduct with the specific intent to violate the law. Id. at 1400. The Hanlester court relied on Ratzlaf v. United States, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994), for its interpretation of the terms "knowing and willful." In Ratzlaf, the United States Supreme Court dealt with a banking statute which provided criminal penalties against persons who "willfully violate the Reporting Act." According to Ratzlaf, what must be willful is the violation and, thus, the person must know that the statute prohibits the conduct and intend to violate the law by engaging in such conduct. In contrast, the Anti-Kickback Statute provides for criminal penalties for whoever "knowingly and willfully" pays or receives remuneration for a referral. 42 U.S.C.A. § 1320a-7b(b). Thus, the Anti-Kickback Statute is textually distinguishable from the statute that was considered in Ratzlaf. The Anti-Kickback Statute is directed at punishment of those who perform specific acts and does not require that one engage in the prohibited conduct with the specific intent to violate the statute. We therefore decline to follow the Hanlester interpretation of the Anti-Kickback Statute. See also United States v. Neufeld, 908 F.Supp. 491 (D.Ohio 1995). Therefore, we affirm the trial court's conclusion that the agreement between MDN and PRC is violative of the Anti-Kickback Statute.
We have considered MDN's remaining arguments as to why the summary final judgment *568 should be reversed and find them unavailing. We therefore affirm the summary final judgment.
FARMER and SHAHOOD, JJ., concur.